Sean D. ZHANG, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 04–CV–3261(ADS).

United States District Court, E.D. New York.

Nov. 18, 2005.

Gary Schoer, Syosset, NY, for the Petitioner.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, by Wayne L. Baker, Assistant U.S. Attorney, Central Islip, NY, for the Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The petitioner Sean D. Zhang ("Zhang" or the "Petitioner") moves the Court for an Order vacating or correcting his sentence pursuant to 28 U.S.C. § 2255. In support of his petition, Zhang argues that his guilty plea was not voluntarily or knowingly made because the court, the government, and his counsel misstated the consequences of his plea.

### I. BACKGROUND

In April 2001, Zhang began selling the chemical 2,4 Dinitrophenol ("DNP") over the internet to bodybuilders who were interested in using it to lose body fat. DNP is a metabolic stimulant known as an "uncoupler" and a toxic dye used in biochemical studies of oxidative processes. Stedmans Medical Dictionary (27th ed.2000). DNP is a chemical substance that is banned by the Food and Drug Administration.

In 1985, Zhang emigrated from China at the age of seven. Zhang and his family received political asylum in 1989 to protect them from the persecution of the Chinese government. Zhang's father was a professor at the National University at Singapore and published numerous articles criticizing the Communist government and its use of Marxism Socialism. English is the only language Zhang speaks proficiently. He married a United States citizen and is a permanent resident, but he is not a citizen of the United States.

In 2001 Zhang was a practicing chemist with a Bachelor of Science degree in "Food Science" from Cornell University. Using the screen name "DNP Guru" on a website known as "Elitefitness.com," Zhang advocated and sold the chemical DNP. Zhang mixed and prepared the DNP capsules himself, and sold them for human consumption. Eric Perrin died as a result of ingesting the DNP he purchased from Zhang. Another customer, James Shull, was hospitalized in a coma for more than ten days as a result of the DNP he purchased from Zhang.

On September 21, 2001, Zhang was arrested in Bloomington, Indiana, and charged with two counts of introducing into interstate commerce a drug, DNP, that had been misbranded with the intent to defraud and mislead, in violation of 21 U.S.C. § 331(a). Following his arrest, Zhang was indicted on ten counts of introducing a misbranded drug and ten counts of mail fraud, in violation of 18 U.S.C. § 1341.

Prior to the trial, Zhang entered into a plea agreement in which he would plead guilty to a single count of mail fraud. As a condition to accepting the plea agreement, Zhang waived his right to appeal if his sentence was 60 months or less. In addition, Zhang was informed that the government would be moving for an upward departure at sentencing based upon Perrin's death and Shull's injuries, and the plea agreement reflected these two factors. Further, the plea agreement stated that the count of mail fraud carries a maximum penalty of 60 months and "Other penalties: Removal."

On June 25, 2002, Zhang entered his guilty plea before a magistrate judge. During the plea allocution, the government stated that Zhang "agrees he[ is] subject to possible post sentence deportation." Tr. at 14. Following up, the magistrate judge stated: "it's not indicated as a consequence of your plea and the plea agreement but the government indicated that this felony conviction because of your immigration status could result in your deportation. Do you understand that?" Zhang replied, "Yes, I understand." Tr. at

15. The court concluded the proceedings by recommending that this Court accept the plea of guilty to count one of the superseding indictment.

On June 27, 2003, following a *Fatico* hearing, Zhang was sentenced to 60 months, the maximum term of imprisonment, three years of supervised release, and $113,414.53 in restitution. Again, the government indicated to the Court that "there is another condition of supervised release. He may be deported. If he does, if you can put on the judgment he should not reenter without the permission of the Attorney General." Sentencing Tr. at 410. The Court agreed, and stated that "if the defendant is deported, he's not to reenter the United States illegally without the consent of the government." Sentencing Tr. at 410. Zhang did not directly appeal his conviction or sentence to the Second Circuit.

On June 17, 2004, Zhang timely filed this motion to vacate his conviction pursuant to 28 U.S.C. § 2255, challenging the validity of his plea due to a Rule 11 violation, and ineffective assistance of counsel. Zhang argued that his plea of guilty was not entered voluntarily due to the representations by the court and his counsel that deportation was not a mandatory consequence of being convicted of the aggravated felony that he pled guilty to, namely mail fraud. Zhang contends that had he pled guilty to the misbranding a drug counts, as opposed to mail fraud, he would have been subject to the same or higher guidelines range, but would not be facing automatic deportation. Indeed, Zhang is willing to replead to the non aggravated felonies, which could aggregate to the same or higher sentence in order to avoid mandatory deportation. Alternatively, Zhang seeks to withdraw his plea and go to trial, which would likely result in the possibility of a greater sentence, but may also avert automatic deportation.

On July 29, 2005, the Court commenced a *Sparman* hearing and ordered the government to brief the issue of: (1) whether the Petitioner will have an opportunity to challenge his deportation, notwithstanding the fact that he was convicted of an aggravated felony; and (2) whether the instruction provided by the magistrate judge was an affirmative misrepresentation of the law, pursuant to *United States v. Couto*, 311 F.3d 179 (2d Cir.2002).

## II. DISCUSSION

### A. STANDARD OF REVIEW

Title 28 U.S.C. § 2255 provides a post conviction remedy for federal prisoners similar to the historic writ of habeas corpus available to state prisoners that is now codified in § 2254. Pursuant to § 2255, a federal prisoner in custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the basis that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255.

As stated by the Second Circuit, "because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir.1995) (citing *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). As a result, prisoners seeking habeas corpus relief pursuant to § 2255 must show

both a violation of their Constitutional rights and "substantial prejudice" or a "fundamental miscarriage of justice." *Id.* at 301.

## B. PROCEDURAL DEFAULT

■ "A motion under § 2255 is not a substitute for an appeal." *United States v. Munoz,* 143 F.3d 632, 637 (2d Cir.1998). In § 2255 proceedings, the Supreme Court has recognized the rule of procedural default or "exhaustion" of federal remedies. *Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Generally, the rule bars the presentation of a claim through a writ of habeas corpus where the petitioner failed properly to raise the claim on direct review. *Id.* If the claim has not been presented on direct review, the procedural bar may be waived only if the petitioner establishes (1) "cause" for the waiver and shows "actual prejudice" from the alleged violations or (2) "actual innocence." *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Rosario v. United States,* 164 F.3d 729, 732 (2d Cir. 1998); *see also Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986); *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643–44, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993).

■ Further, the traditional procedural default rule generally does not apply to ineffective assistance of counsel claims. *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In *Massaro,* the Supreme Court held that ineffective assistance claims are appropriately litigated in the context of a collateral challenge in the district court and not on direct appeal. *Id.* at 504–05, 123 S.Ct. 1690; *accord United States v. Dominguez*

*Benitez,* 542 U.S. 74, 83 n. 9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). This is so because the trial record is not developed precisely for the object of litigating the ineffective assistance claim, but instead is devoted to issues of guilt or lack of guilt. *Massaro,* 538 U.S. at 504–05, 123 S.Ct. 1690, 155 L.Ed.2d 714.

■ Zhang did not challenge the voluntariness of his plea on direct appeal and he does not make a claim of actual innocence. Rather, Zhang contends that the representations by the court, the government, and his counsel about the consequences of his plea caused him to believe that deportation was a discretionary procedure that would be resolved in an immigration court at the conclusion of his prison sentence. "To satisfy the 'cause' requirement, the petitioner must show circumstances 'external to the petitioner, something that cannot be fairly attributed to him.'" *Rosario–Dominguez v. United States,* 353 F.Supp.2d 500, 508 (S.D.N.Y.2005) (quoting *Marone v. United States,* 10 F.3d 65, 67 (2d Cir.1993) and *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

■ A direct appeal of the issues brought in this collateral challenge would have been unnecessary for several reasons. First, Zhang's claim includes ineffective assistance of counsel, which is properly brought before this Court for the first time on collateral review to develop the factual record. Second, Zhang was led to believe that deportation was only a possibility and only learned of the automatic nature of his deportation long after the time for a direct appeal had expired. Finally, any direct appeal would have been futile since Zhang waived his right to a direct appeal in his plea agreement.

As will be discussed more fully below, the Court finds that the Petitioner has shown that he was prejudiced by the mi-

sinformation concerning the prospects of his deportation when he pled guilty. *See, e.g., United States v. Singh,* 305 F.Supp.2d 109, 111 (D.D.C.2004) (permitting a procedurally barred § 2255 claim regarding the voluntariness of a guilty plea made when the petitioner was not properly informed that deportation was absolute); *Mandarino v. Ashcroft,* 290 F.Supp.2d 253, 260–61 (D.Conn.2002) (holding that ignorance of deportation consequences of the defendant's sentence was "cause" for the defendant's failure to appeal the sentence).

■ The government also contends that the petitioner is barred from collaterally attacking his conviction based on an express waiver of appeal in the plea agreement. "There is no general bar to a waiver of collateral attack rights in a plea agreement." *Frederick v. Warden, Lewisburg Correctional Facility,* 308 F.3d 192, 195 (2d Cir.2002) (citing *Garcia–Santos v. United States,* 273 F.3d 506, 509 (2d Cir. 2001)). "However, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been produced, here, the plea agreement." *Id.* (citations omitted).

Where, as here, a petitioner claims a violation of Rule 11 or the ineffectiveness of trial counsel, the Second Circuit has stated that he is not barred under the terms of the plea agreement from bringing a petition to vacate the conviction based on the legal shortcomings of the process in which the waiver was obtained. *See id.* at 196. Accordingly, the Court will address "the merits of [the] petition notwithstanding [the petitioner's] general waiver of the right to collaterally attack his conviction." *Id.* at 193; *see also Lebron v. United States,* 267 F.Supp.2d 325, 328 (E.D.N.Y. 2003).

## C. THE VALIDITY OF THE GUILTY PLEA

### 1. The Requirements of Rule 11

Rule 11 of the Federal Rules of Criminal Procedure "Fed.R.Crim.P." sets the standard for accepting guilty pleas. The rule requires the court to " 'determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).' " Fed. R.Crim.P. 11(b)(2). In addition, the rule requires that before accepting a plea of guilty the court must advise the defendant of his right to persist in his plea of not guilty, and of the rights he waives by pleading guilty. Fed.R.Crim.P. 11(b)(1). The defendant must be informed, among other things, of the right to a jury trial, the right to be represented by counsel at the trial, the right to confront and cross-examine witnesses, and the right not to testify. *Id.*

Rule 11 also requires that a defendant be informed of possible direct consequences of the plea, such as the maximum prison term, the maximum fine, the effect of a supervised release term, the mandatory special assessment, the applicability or inapplicability of the sentencing guidelines, and the potential of an order of restitution. *Id.* Rule 11 does not require that a defendant be given notice of "collateral" consequences of a plea of guilty. *United States v. $ 228,536.00,* 895 F.2d 908, 915 (2d Cir. 1990).

The distinction between the direct and collateral consequence of a plea "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* at 916 (quoting *George v. Black,* 732 F.2d 108, 110 (8th Cir.1984)). Examples of "collateral consequences" include: whether a federal sentence runs concurrently or consecutively to a state sentence, *United States v. Ray,* 828 F.2d 399, 418 (7th Cir.

1987); parole eligibility or revocation, *Holmes v. United States*, 876 F.2d 1545, 1549 (11th Cir.1989); the likelihood of an undesirable military discharge, *Redwine v. Zuckert*, 317 F.2d 336, 338 (D.C.Cir.1963); and the potential for civil commitment proceedings, *George v. Black*, 732 F.2d 108, 111 (8th Cir.1984).

■ It is well-settled that the *possibility* of deportation after a guilty plea is a "collateral consequence" that need not be addressed at the plea hearing. *Michel v. United States*, 507 F.2d 461, 465–66 (2d Cir.1974); *United States v. Santelises*, 476 F.2d 787, 790 (2d Cir.1973); *see also United States v. Yearwood*, 863 F.2d 6, 8 (4th Cir.1988); *Fruchtman v. Kenton*, 531 F.2d 946, 948–49 (9th Cir.1976). However, the Second Circuit has not decided whether automatic deportation, as opposed to possible deportation, is a direct or collateral consequence of the guilty plea requiring it to be addressed at the plea proceeding. *See United States v. Couto*, 311 F.3d 179, 190 (2d Cir.2002) (finding the argument to be " 'persuasive' " and deserving of "careful consideration," but not addressing the merits of the issue). *But see El–Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (finding that "the automatic nature of the deportation proceeding does not necessarily make deportation a direct consequence of the guilty plea" because it remains "beyond the control and responsibility of the district court in which that conviction was entered"); *Salama v. United States*, No. 05–1257, 2005 WL 1661830, at *3 n. 5 (E.D.N.Y. July 15, 2005) (finding that the petitioner's Rule 11 claim was procedurally barred and noting, in the alternative, that automatic deportation is not a direct consequence of a guilty plea).

Whether automatic deportation is a direct or collateral consequence is of no matter in this case because the court did address deportation at the plea hearing.

The government advised the court that Zhang was "subject to possible post sentence deportation." In turn, the court specifically informed Zhang that his plea "could result in [his] deportation." Although they were not required to advise the defendant concerning deportation, once the court and the government embarked down the path of informing Zhang about the potential deportation consequences, the issue then arises, namely, was it constitutionally permissible to cause him to believe that deportation was not automatic.

## 2. Constitutional Requirements

■ Not all Rule 11 violations are "constitutional or jurisdictional" errors that result in a successful collateral challenge to a plea of guilty. A plea of guilty is constitutionally valid to the extent it is "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). A plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . ." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *Triestman v. United States*, 124 F.3d 361, 368 (2d Cir.1997).

■ "Rule 11 sets forth requirements for a plea allocution and 'is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *United States v. Andrades*, 169 F.3d 131, 133 (2d Cir.1999) (quoting *United States v. Renaud*, 999 F.2d 622, 624 (2d Cir.1993) (internal quotation marks omitted)). "This does not mean, however, that the district court must anticipate and warn the defendant of 'every conceivable collateral effect the conviction entered on the plea may have.' " *United States v.*

*Couto,* 311 F.3d 179, 188–89 (2d Cir.2002) (citing *Bye v. United States,* 435 F.2d 177, 179 (2d Cir.1970)). "Rather, 'the purpose of Rule 11[is] to insure that an accused is apprised of the significant effects of his plea so that his decision to plead guilty and waive his right to trial is an informed one.'" *Id.* at 189 (quoting *Bye,* 435 F.2d at 180) (emphasis in original).

■■■■ To that end, "[the Second] Circuit has 'adopted a standard of strict adherence to Rule 11.'" *United States v. Livorsi,* 180 F.3d 76, 78 (2d Cir.1999) (quoting *United States v. Lora,* 895 F.2d 878, 880 (2d Cir.1990)). As such, review of an acceptance of a guilty plea "examine[s] critically even slight procedural deficiencies to ensure that ... none of the defendant's substantive rights ha[ve] been compromised." *Id.* at 78 (quoting *United States v. Maher,* 108 F.3d 1513, 1520 (2d Cir. 1997) (internal quotation marks omitted)). "[I]f the requirements of Rule 11 have not been met, 'the plea must be treated as a nullity.'" *Renaud,* 999 F.2d at 624 (quoting *United States v. Journet,* 544 F.2d 633, 636 (2d Cir.1976)). However, "[n]ot every deviation from Rule 11 constitutes a violation of the Rule." *Frederick,* 308 F.3d at 197. "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). Therefore, a guilty plea should not be vacated "when there has been [only] a minor and technical violation of Rule 11 which amounts to harmless error." *Renaud,* 999 F.2d at 624 (quoting *United States v. Ferrara,* 954 F.2d 103, 106 (2d Cir.1992) (quoting Fed. R.Crim.P. 11 advisory committee's note (1983 amendment))).

One of the requirements set forth by Rule 11 is that a guilty plea must be voluntary. This requirement codifies the due process standard set forth in *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct.

1709, 1711–13, 23 L.Ed.2d 274 (1969), that a guilty plea be intelligently and voluntarily given and that the defendant be competent to understand the nature of the charge, his constitutional rights and the scope of the penalty provided by law. The Second Circuit has identified three major purposes of Rule 11(d): (1) to make certain that the plea is indeed voluntary; (2) to prevent the misconception by defendants that anyone but the court has the authority to determine their sentence; and (3) to preserve the integrity of the plea by eliminating the basis for a later claim by the defendant that the plea was defective. *United States v. Gonzalez,* 820 F.2d 575, 579 (2d Cir.1987).

■■■■ In order to successfully challenge a guilty plea conviction based on a Rule 11 violation, a petitioner must establish that the violation constituted a "constitutional or jurisdictional" error, or show that the error resulted in a "'complete miscarriage of justice'" or in a proceeding "'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). The Petitioner must also demonstrate that the violation caused prejudice in that he did not understand the consequences of his plea. In other words, if the petitioner had been properly advised, he would not have pled guilty. *Lucas v. United States,* 963 F.2d 8, 12–13 (2d Cir.1992).

In defining the voluntariness of a guilty plea, the Supreme Court has stated:

A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment),

misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes). *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (citations and quotations omitted).

■ A court should not accept a plea unless it was "made voluntarily after proper advice and *with full understanding of the consequences." Kercheval v. United States,* 274 U.S. 220, 223 47 S.Ct. 582, 71 L.Ed. 1009 (1927) (emphasis added). With these principles in mind, a misrepresentation of the consequences of a plea made by the court and the government may render the plea involuntary. In this case, the question remains whether there was a misrepresentation by the government and the court. In order to resolve this question, the Court must first discuss an overview of the scope and current state of immigration law.

### 3. Immigration Law and Aggravated Felons

■ Both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), contain comprehensive amendments to the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1101 et seq. Under § 237(a)(2)(A)(iii) of the INA (8 U.S.C. § 1227(a)), noncitizens are subject to deportation or removal based on the commission of an "aggravated felony." The INA expressly defines the term "aggravated felony" under § 1101(a) to include a list of 21 categories of offenses. INA § 1101(a)(43) defines "aggravated felony" to include an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $ 10,-000." *Id.* § 1101(a)(43)(M). It is undis-

puted in this case that Zhang's mail fraud conviction constitutes an aggravated felony under the statute.

Under the explicit terms of the INA, any noncitizen "who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1251(a)(2)(A)(iii). The INA not only subjects aliens to automatic deportation, it imposes severe sanctions against aliens convicted of aggravated felonies, barring them from discretionary relief, rendering them ineligible for withholding of deportation, and precluding asylum. Once deportation proceedings commence, the alien's rights are severely limited. For example, an aggravated felon facing deportation is presumed to be deportable. 8 U.S.C. § 1228(c). The aggravated felon is also ineligible for discretionary relief from removal such as asylum, 8 U.S.C. § 1158(b)(2)(B)(I); restriction on removal, 8 U.S.C. § 1231(b)(3)(B); cancellation of removal, 8 U.S.C. § 1230a(a)(3); and voluntary departure, 8 U.S.C. § 1230b(a)(1).

Significantly, an aggravated felon who has been sentenced to an aggregate term of imprisonment of at least 5 years is also ineligible for withholding of removal under the Convention Against Torture ("CAT"). 8 U.S.C. § 1231(b)(3)(B); *Wang v. Ashcroft,* 320 F.3d 130, 136 n. 11 (2d Cir.2003). The limited relief that an aggravated felon may obtain, if entitled to the protection of CAT, is to have his removal deferred to a country where he or she is more likely not to be tortured. *Id.;* 8 C.F.R. § 208.17(a). However, the aggravated felon is still subject to deportation to another country, but not one that will subject him to torture.

Aggravated felons are also not entitled to normal judicial review of deportation orders based on such convictions. 8 U.S.C. § 1252(a)(2)(C). The Second Circuit has stated in *Henderson v. INS,* 157 F.3d 106, 119 (2d Cir.1998), that Congress

"intended to make ... administrative decisions [regarding removal] nonreviewable to the fullest extent possible under the Constitution." *Id.* at 119. The limited judicial avenue available to criminal aliens subject to deportation is under the REAL ID Act, Pub.L. No. 109–13, 119 Stat. 231 (2005), which amended 8 U.S.C. § 1252 to provide judicial review of an order of removal in the form of a "petition for review" in the Court of Appeals.

Although one can describe the level of certainty of deportation for aggravated felons as mandatory, required, predictable, or highly likely, the Second Circuit has described the likelihood as "automatic," *Couto,* 311 F.3d at 184, and the Supreme Court calls it "certain." *INS v. St. Cyr,* 533 U.S. 289, 325, 121 S.Ct. 2271, 2293, 150 L.Ed.2d 347 (2001). Notwithstanding the Supreme Court and the Second Circuit's characterization of deportation following conviction for an aggravated felony as being "automatic" or "certain," in this case the government persists in arguing that deportation is only possible. This argument has no merit. The Supreme Court has stated that "[t]here is a clear difference ... between facing possible deportation and facing certain deportation. Prior to AEDPA and IIRIRA, aliens ... had a significant likelihood of receiving § 212(c) relief. Because ... aliens ... almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe ... effect." *St. Cyr,* 533 U.S. at 325, 121 S.Ct. 2271, 2293, 150 L.Ed.2d 347 (citations omitted).

### 4. The Voluntariness of Zhang's Guilty Plea

With the backdrop of immigration law referred to above in mind, it is clear that the Rule 11 colloquy in this case was,

although inadvertent, misleading and a misrepresentation. At the plea the government stated that Zhang was facing "possible" deportation and the court said that he "could" be deported. Although it was unintentional, this was an affirmative misrepresentation. Under current immigration law, Zhang faces certain deportation for his conviction of mail fraud—an aggravated felony. Any "possibility" concerning his deportation lies not with whether deportation will occur, but with the remote chance that he can prevail on a claim under the Convention Against Torture. However, even prevailing on a CAT claim would only defer removal to another foreign country. *See* 8 C.F.R. §§ 208.13(b)(1)(B), 208.16(b)(1)(B) and 208.17(b)(2).

In *Couto,* the Second Circuit ruled that a failure to inform a defendant of deportation is not objectively unreasonable, but "affirmative misadvice about even a collateral consequence of a plea constitutes ineffective assistance of counsel and provides a basis to withdraw a plea." *Id.* 311 F.3d at 188. Similarly, although a judge may not be required to inform a defendant about deportation, if he or she makes a statement that misleads the defendant into thinking that deportation is not mandatory, then a constitutional violation occurs which provides sufficient grounds to vacate a plea. *See United States v. Singh,* 305 F.Supp.2d 109, 111 (D.D.C.2004).

In *Singh,* a comparable case, the defendant pled guilty to an aggravated felony and at the Rule 11 plea hearing the judge told the defendant that there was a "chance" of deportation, even though he was entering a plea of guilty to an aggravated felony that would lead to mandatory deportation. In vacating the petitioner's plea of guilty on the basis of a Rule 11 violation, the court held that "there was a misunderstanding by the AUSA, the de-

fendant's attorney who remained silent when the defendant was being misinformed, and the presiding judge, as to the deportation consequences of defendant's guilty plea." *Id.* at 114–15.

Here too, it is clear that Zhang was unintentionally misled by the AUSA and the court. Merriam–Webster's Third New International Dictionary Unabridged defines the word "could" as "be made possible or probable by circumstances" and "possible" as "that may or may not occur: that may chance: dependent on contingency: neither probable nor impossible." The use of these words to describe Zhang's immigration status was misleading. Under the explicit terms of the INA, any noncitizen "who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1251(a)(2)(A)(iii). As stated by the Supreme Court, "[t]here is a clear difference ... between facing possible deportation and facing certain deportation." *St. Cyr,* 533 U.S. at 325, 121 S.Ct. 2271, 2293, 150 L.Ed.2d 347 (citations omitted).

The misleading nature of the word "could" was not cured by repetition or the addition of other words during the plea colloquy. Indeed, there was no other discussion of the subject of deportation other than stating that it "could" happen, or that it was a possibility. In addition, Zhang's counsel, although he prefaced his advice to him by recommending that he seek an immigration attorney when he got to prison, misled him by indicating that his background—being married to an American, no prior criminal history, being convicted of a non-violent crime—were all factors that the immigration court would consider. Further, the government's argument that the inclusion of "removal" in the plea agreement as a possible consequence of entering a plea of guilty is unavailing. Removal was included in the plea agreement with the list of possible consequences, all of which were not binding on the Court at sentencing and none of which were characterized as "certain."

The case that the government cites as controlling precedent in this area of law, *United States v. Santelises,* 476 F.2d 787, 790 (2d Cir.1973), does not address the effect of a misrepresentation or misleading statement made by the government or the court at the plea hearing with regard to the voluntariness of a plea. Significantly, in *Santelises* the Second Circuit held that under the law at that time, deportation was not "automatic," and thus did not require the possible consequence of deportation to be addressed at a plea hearing. Further, in *Santelises* the Second Circuit never addressed the petitioner's argument that the judge affirmatively misled the defendant as to the consequences of the plea because it was held to be "fanciful" and had no support in the record. *Santelises,* 476 F.2d at 790.

Similarly, the cases that the government finds support in decided after *Couto, Cisse v. United States,* 330 F.Supp.2d 336 (S.D.N.Y.2004), and *Adebayo v. United States,* No. 01–0119, 2005 WL 383553, at *3 (E.D.N.Y.2005) are relevant but do not address the issue of misrepresentation at the plea hearing. In *Cisse,* the court informed the petitioner at the plea allocution of the "possible consequences" of a guilty plea, including consequences for his "status in the United States," and his counsel acknowledged that the petitioner was "jeopardizing his immigration status." *Cisse,* 330 F.Supp.2d at 341–42. In *Adebayo,* the court did not address the deportation consequences with the defendant. *Adebayo* 2005 WL 383553, at *3. In both cases the court denied the petitioners' request to withdraw their plea as involuntary on the ground that the court had no affirmative duty in the first place to discuss the

consequences of deportation. *See id.* at *3; *Cisse,* 330 F.Supp.2d at 343. In this case, Zhang was affirmatively advised by the court, the government, and his attorney that deportation was merely possible, not probable or certain.

Accordingly, the Court finds that the misrepresentation was sufficient to render Zhang's plea constitutionally involuntary. As such, the motion by the Petitioner pursuant to 28 U.S.C. § 2255 to vacate and set aside his guilty plea and sentence is granted.

## III. *CONCLUSION*

For the reasons set forth above, it is hereby

**ORDERED**, that the Petitioner's motion to vacate and set aside his guilty plea and sentence is **GRANTED**; and it is further

**ORDERED**, that Zhang's guilty plea and sentence are vacated; and it is further

**ORDERED**, that the Petitioner shall be detained until further order of the Court; and it is further;

**ORDERED**, that the parties in criminal case No. Cr 01–1033 are directed to appear for trial before this Court on January 4, 2006, at 9:30 am; and it is further;

**ORDERED**, that the Clerk of the Court is directed to close this civil case.

**SO ORDERED.**